# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ASIA WHEEL CO., LTD., TRAILSTAR LLC, LIONSHEAD SPECIALTY TIRE & WHEEL, LLC, *and* DEXTER DISTRIBUTION GROUP LLC, F/K/A TEXTRAIL

*Plaintiff-Appellants,*

v.

UNITED STATES *and* DEXSTAR WHEEL DIVISION OF AMERICANA DEVELOPMENT, INC.,

*Defendant-Appellees.*

Appeal from the U.S. Court of International Trade
Consol. Case Nos. 1:23-cv-00096-GSK, 1:23-cv-00097-GSK,
1:23-cv-00098-GSK, and 1:23-cv-00099-GSK,
Judge Gary S. Katzmann

## RESPONSE BRIEF OF DEFENDANT-APPELLEE
DEXSTAR WHEEL DIVISION OF AMERICANA DEVELOPMENT, INC.

*Submitted by*

Roger Schagrin
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street NW, Suite 500,
Washington, DC 20001
202-223-1700
nbirch@schagrinassociates.com
*Counsel for Dexstar Wheel*

December 15, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-1689 |
| **Short Case Caption** | Asia Wheel Co., Ltd. v. US |
| **Filing Party/Entity** | Dexstar Wheel Division of Americana Development, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 12/15/2025

Signature: /s/ Roger B. Schagrin

Name: Roger B. Schagrin

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Dexstar Wheel Division of Americana Development, Inc. | | Dexstar Wheel is a division of Americana Development, Inc.; Americana Development is owned by American Kenda Rubber Industrial Co., Ltd., which is in turn owned by Kenda Rubber Industrial Company, a publicly traded company. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable  ☐  Additional pages attached

| | | |
|---|---|---|
| Joseph A. Laroski , Jr., formerly of Schagrin Associates | Michelle Rose Avrutin, formerly of Schagrin Associates | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)  ☑  No  ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable  ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

GLOSSARY ................................................................................................. v

STATEMENT OF RELATED CASES ....................................................... 1

STATEMENT OF THE CASE .................................................................. 2

SUMMARY OF THE ARGUMENT ....................................................... 10

ARGUMENT ........................................................................................... 13

   I.  Asia Wheel's and the Importers' Claims Regarding the Coverage of the Scope Impermissibly Ignore the Full Language of the Scope and of Commerce's Determinations ........ 15

    a.  Commerce did not undertake a k(1) analysis .............................. 15

    b.  The full language of the scope shows Asia Wheel's and the Importers' claims to be without merit ......................................... 18

    c.  Commerce properly found that the scope was ambiguous as to a production process it did not address during the original investigations ................................................................ 25

  II.  Commerce Provided the Adequate Notice Required under U.S. Law; an Exhaustive List of All Possible Products Covered Was Never Required ....................................................... 33

    a.  Commerce provides a general description of the covered merchandise, which provides fair warning to importers ............ 33

    b.  Commerce properly declined to instruct CBP on how that agency should apply its independent authority ........................... 38

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ................. 46

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*ArcelorMittal Stainless Belgium N.V. v. United States*, 694
F.3d 82 (Fed. Cir. 2012) ....................................................... 25

*Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d
1246 (Ct. Int'l Trade 2022) ............................................. 44, 45

*Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229
(Ct. Int'l Trade 2019) ........................................................ 26

*Bell Supply Co., LLC v. United States*, 888 F.3d 1222 (Fed.
Cir. 2018) ......................................................................... 16

*Canadian Solar, Inc. v. United States*, 918 F.3d 909 (Fed.
Cir. 2019) ........................................................................... 6

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d
1324 (Ct. Int'l Trade 2021) ................................................ 45

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir.
2002) ........................................................................... 18, 36

*Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068 (Fed.
Cir. 2001) ..................................................................... 18, 28

*King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed.
Cir. 2012) ............................................................... 14, 18, 22

*Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed.
Cir. 2017) ......................................................................... 18

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir.
2006) ............................................................................... 13

*Novosteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002) ............. 14

*Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d
1341 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed.
Cir. 2020) ......................................................................... 19

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101
F.4th 1310 (Fed. Cir. 2024), *cert. denied sub nom. Saha
Thai Steel Pipe Pub. Co. Ltd. v. Wheatland Tube Co.*, 145
S. Ct. 1309, 221 L. Ed. 2d 396 (2025) ............................. 13, 14

*SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) .............................................. 19

*Star Pipe Prod. v. United States*, 981 F.3d 1067 (Fed. Cir. 2020) ........................................................... 43, 44

*Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020) (en banc) .................... 13, 40, 41, 42, 44, 46

*Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) ...................................... 7

*Vandewater Int'l Inc. v. United States*, 130 F.4th 981 (Fed. Cir. 2025) ................................................... 16

*Vietnam Finewood Co. Ltd. v. United States*, 633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) .............................. 19

*Worldwide Door Components, Inc. v. United States*, 119 F.4th 959 (Fed. Cir. 2024) ................................... 14

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................... 13

19 U.S.C. § 1517(e) .................................... 41, 42, 46

19 U.S.C. § 1671e(a)(2) .................................. 25, 36

19 U.S.C. § 1673e(a)(2) .................................. 25, 36

## Administrative Determinations

*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 83 Fed. Reg. 45,095 (Dep't Commerce Sept. 5, 2018) ......................................................... 21

*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances*, 83 Fed. Reg. 32,707 (Dep't Commerce July 9, 2019) ................. 4

## Regulations

19 C.F.R. § 351.225(k)(1) ............................ 15, 16, 17

19 C.F.R. § 351.225(k)(2) .................................................................... 15, 16

19 CFR § 351.225(l) .................................................... 39, 40, 41, 42, 43, 46

## **Other Authorities**

Statement of Administrative Action accompanying the
  Uruguay Round Agreements Act, Pub. L. No. 103-465, 108
  Stat. 4809, H. Doc. No. 103-316 (1994) .................................................. 3

## GLOSSARY

| Term | Definition |
|---|---|
| AD | Antidumping |
| *Bell Supply IV* | *Bell Supply Co., LLC v. United States*, 888 F.3d 1222 (Fed. Cir. 2018) |
| *Bell Supply VI* | *Bell Supply Co., LLC v. United States*, 393 F. Supp. 3d 1229 (Ct. Int'l Trade 2019) |
| CBP | U.S. Customs and Border Protection |
| *CIT Op.* | *Asia Wheel Co., Ltd. v. United States*, CIT Slip Op. 25-17, 762 F.Supp.3d 1289 (2025) |
| CVD | Countervailing Duty |
| EAPA | Enforce and Protect Act |
| *EAPA Initiation* | *Notice of Initiation of Investigation and Interim Measures Taken as to Lionshead Specialty Tire and Wheel LLC; Tex Trail LLC; and Trailstar LLC Concerning Evasion of the Antidumping and Countervailing Duty Orders on Steel Trailer Wheels From China* (CBP July 15, 2020) |
| *Final Inv. Memo* | *Certain Steel Wheels from the People's Republic of China: Final Scope Decision Memorandum for the Final Antidumping Duty and Countervailing Duty Determinations* (Dep't Commerce July 1, 2019) |
| *Final Scope Memo* | *Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand (Asia Wheel)* (Dep't Commerce April 11, 2023) |
| *Inv. Prelim. Memo* | *Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Preliminary Scope Decision Memorandum* (Dep't Commerce April 15, 2019) |
| *PA's Brief* | Joint Brief of Plaintiffs-Appellants (June 23, 2025) |

Defendant-Appellee Dexstar Wheel Division of Americana Development, Inc. ("Dexstar Wheel") respectfully submits this brief in response to the opening brief of Plaintiffs-Appellants Asia Wheel Co., Ltd. ("Asia Wheel"), TRAILSTAR LLC ("Trailstar"), Lionshead Specialty Tire & Wheel, LLC ("Lionshead") and Dexter Distribution Group LLC, f/k/a TexTrail Inc. ("TexTrail") (collectively, "the Importers") ("*PA's Brief*") in the appeal of the decision by the Court of International Trade (the "CIT") in *Asia Wheel Co., Ltd. v. United States*, Consol. CIT No. 23-096.

## STATEMENT OF RELATED CASES

In response to Fed. Cir. Rule 47.5(a), Dexstar Wheel states that it is not aware of any other appeals in or from the same matter that is or has been before this or any other appellate court (other than the four appeals that have been consolidated under this case).

The U.S. Customs and Border Protection ("CBP") Enforce and Protect Act ("EAPA") determination regarding some merchandise at issue in this case, where CBP applied the scope ruling challenge in this case, has also been challenged before the CIT in *Dexter Distribution Group LLC f/k/a TexTrail, Inc. v. United States* (CIT Consol. Case No.

24-00019). That case has been stayed by the CIT pending the final outcome of this appeal.

Asia Wheel has also appealed to this Court a CIT decision regarding similar issues but regarding a different product not subject to the antidumping ("AD") and countervailing duty ("CVD") orders at issue here in *Asia Wheel Co., Ltd. v. United States* (Fed. Cir. Consol. Case No. 25-1694; companion case to these consolidated cases).

## STATEMENT OF THE CASE

While the statement of the case presented in Asia Wheel and the Importers' brief in chief (*see PA's Brief* at 3-12) is generally correct, it glosses over certain facts that are highly relevant to understanding actions taken by Commerce.

This case addresses a common situation that arises when foreign exporters are faced with AD and CVD orders in the United States– orders that are intended to alleviate the injury their unfairly traded exports cause to U.S. industries and workers. Increasingly, exporters of such unfairly traded merchandise attempt to elude the enforcement of those orders by moving their operations in the final steps to a third country to take advantage of the technical limitations of U.S. AD and

CVD orders that directly address only exports from the first country. Those exporters then seek to continue virtually the same unfair trade practices with effectively the same merchandise, reviving the injury to U.S. producers and their workers. *See, e.g.*, Statement of Administrative Action accompanying the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809, H. Doc. No. 103-316 (1994), at 893 (expressing Congressional concern with the "relative eas{e}" with which foreign exporters could circumvent U.S. AD and CVD orders by establishing "screwdriver" finishing operations in a third country).

As background to this case, Asia Wheel's Chinese parent company, Zhejiang Jingu Co., Ltd. ("Zhejiang Jingu"), was a mandatory respondent in the AD and CVD investigations on certain steel trailer wheels from China before Commerce. However, mid-investigations, Zhejiang Jingu suddenly withdrew its cooperation from Commerce and so chose to receive high adverse facts available AD and CVD rates as a fully noncooperative respondent (as did the other mandatory respondent). *See, e.g.*, *Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative*

*Determination of Critical Circumstances*, 83 Fed. Reg. 32,707, 32,708 (Dep't Commerce July 9, 2019) (noting Zhejiang Jingu's withdrawal of cooperation).

Why Zhejiang Jingu believed it could disregard the higher adverse duty rates on its exports from China that its noncooperation would certainly lead to soon became clear. Information through the market revealed that Zhejiang Jingu and the other Chinese respondent were shifting their final production steps on the subject wheels (and wheels subject to other then-ongoing AD and CVD investigations in the United States) to third countries, including to Asia Wheel in Thailand. *See Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China: Preliminary Scope Decision Memorandum* (Dep't Commerce April 15, 2019), Appx134 ("*Inv. Prelim. Memo*"). Discovering this, Dexstar, as the domestic petitioner, asked Commerce to clarify the scope language to state that such third-country processing did not remove the Chinese merchandise from the scope coverage, to cut off that route of circumvention. *See id.*

In a preliminary scope ruling in these AD/CVD investigations, Commerce noted that the same request had been made by other

domestic petitioners to address these actions being taken by Zhejiang Jingu and the other Chinese respondent in the AD and CVD investigations on other wheels.[1] Commerce explained that the same reasoning to address these attempts to elude the reach of the investigations applied and so stated that it would make the same decision in these investigations as it did in the others. *Id.*, Appx135.

Commerce stated that its understanding of the question placed before it by Dexstar was specific to the third-country finishing consisting of either the painting of a Chinese wheel or the assembly and painting of a wheel rim and wheel disc both from China. *Id.*, Appx137-138 ("we understand the petitioner's statements…to be requesting that rims and discs from China that have been further processed in a third country into finished steel wheels be included within scope.")

Commerce rejected the argument by Zhejiang Jingu that it was too late in the investigations for Commerce to address that issue. *Id.*, Appx136. Commerce stated that it had the information it needed to

---

[1] That separate scope ruling is currently being challenged before this Court by Asia Wheel in case no. 2025-1694.

address this assembly of Chinese rims and discs and that parties had been given the opportunity to address that issue. *Id.*

Commerce also stated that it was not applying its "substantial transformation" test to address the issue of the origin of a wheel made from a Chinese rim *or* disc. *Id.* Commerce pointed out that this Court has held that the substantial transformation test is not the only path for Commerce to make a country-of-origin determination *during* its investigations. *Id.*, Appx137 (citing to *Canadian Solar, Inc. v. United States*, 918 F.3d 909 (Fed. Cir. 2019)). But that substantial transformation test, Commerce further explained, *could* be applied in the future to answer other country of origin questions under the scope of these orders. *Inv. Prelim. Memo*, Appx137.

Commerce also explained that it was making a minor adjustment to the proposed scope language from the domestic petitioner on the point it was then addressing. *Id.* Commerce therefore added "from China" to the "rim and disc" example listed in the scope language as third country processing that was unambiguously covered. *See Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand (Asia Wheel)* (Dep't Commerce April 11, 2023), Appx023 (the adopted scope

language) ("*Final Scope Memo*"). Commerce did *not*, however, change the language that specified that the coverage of the scope is "including, but not limited to," that example. Instead, the scope states that "any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China" would not remove it from the scope coverage if performed in a third country. *Id.*

Dexstar had also asked Commerce to address a scope question in these investigations regarding coverage of wheels finished in China with a certain coating.[2] Commerce held it did not have enough time prior to issuing the preliminary scope determination discussed above to address those issues, so called for further briefing on scope questions in the investigations. *See Certain Steel Wheels from the People's Republic of China: Final Scope Decision Memorandum for the Final Antidumping Duty and Countervailing Duty Determinations* (Dep't Commerce July 1, 2019), Appx119 ("*Final Inv. Memo*").

---

[2] The CIT has also rejected challenges by various importers and Zhejiang Jingu to Commerce's determination on that scope question. *See, e.g.*, *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021).

In those briefs, Zhejiang Jingu and certain of its importers argued that Commerce should further "confirm" and "clarify" that "wheels comprised rims *or* discs from China that are assembled in a third country" were *not* covered by the scope. *Id.*, Appx120-121. Dexstar responded that its intent, as the petitioner, was for the scope to cover wheels made from "either a rim or a disc from China…. not only a rim and a disc together." *Id.*, Appx121.

Commerce responded that it was not "adopting either the respondent/importer interested parties' or the petitioner's suggested language." *Id.*, Appx122. Commerce explained that its understanding of the clarifying language it added to the scope in the preliminary determination "explicitly identified both rims <u>and</u> discs" from China and did not further address "instances of third country assembly where only one such constituent part is present." *Id.*, Appx122 (emphasis in the original). Commerce held that "no such consideration of individual constituent parts was implicit in the clarification but, rather, was presented for the first time in the rebuttal stage of this proceeding…." *Id.*, Appx123-124.

Regarding the separate question of "rim or disc" wheels, Commerce stated that it did

> not foreclose a further analysis of substantial transformation should a product be completed in a third country from a mix of rim and disc parts from China and a third country, if an interested party requests a scope ruling and/or to address a future circumvention concern.

*Id.*, Appx124 (emphasis added). The "current scope language," Commerce explained "is clear that only if all constituent rim and disc parts to form a steel wheel are from China does the order apply *notwithstanding* any analysis of substantial transformation." *Id.* (emphasis added).

Zhejiang Jingu ignored Commerce's specific warnings that *further* analysis would be required to address the scope coverage of wheels completed from mixed-origin components; choosing to shift its production to Thailand and independently claim that merchandise to be out of scope. *See Notice of Initiation of Investigation and Interim Measures Taken as to Lionshead Specialty Tire and Wheel LLC; Tex Trail LLC; and Trailstar LLC Concerning Evasion of the Antidumping and Countervailing Duty Orders on Steel Trailer Wheels From China* (CBP July 15, 2020), Appx216-217 ("*EAPA Initiation*"). Zhejiang Jingu did not seek the scope ruling that would have provided that substantial

transformation analysis Commerce had stated would be necessary to answer that question.

When various domestic wheel producers shared information with CBP that suggested the Asia Wheel facility in Thailand was in fact inoperable even while it shipped increasing volumes of wheels to the United States, CBP initiated multiple EAPA investigations to determine if Asia Wheel was evading AD/CVD orders by shipping Chinese wheels through Thailand. *See id.* at Appx215-216. After a site visit to Asia Wheel's factory in Thailand by CBP's investigators found "no evidence of recent steel wheel production at Asia Wheel" for larger steel wheels covered by other AD/CVD orders (*see id.*, Appx229), Asia Wheel eventually sought the scope ruling at issue here. Asia Wheel argued that, because it did not produce wheels in Thailand from both a Chinese rim and a Chinese disc, its merchandise was outside the scope of these orders. *See, e.g., Request for Scope Ruling for Asia Wheel's Steel Trailer Wheels* (Nov. 10, 2020), Appx107.

## SUMMARY OF THE ARGUMENT

Asia Wheel and the Importers here challenge Commerce's ruling that Asia Wheel's finishing of its Chinese parent's wheel parts in a third

country did not substantially transform that merchandise for purposes of AD and CVD duties. As Commerce's ruling was fully supported by substantial evidence, this Court should instead affirm Commerce's determination and the judgement of the CIT.

Both Commerce and the CIT have correctly rejected Asia Wheel's and the Importers' claims that Commerce had somehow previously ruled that this processing removed the merchandise from the coverage of the AD and CVD orders. Asia Wheel's and the Importers' arguments ignore both the plain language of the scope that Commerce did adopt and Commerce's actual statements when it adopted that scope. Commerce had expressly addressed a different type of processing. Commerce then expressly informed all parties that it was not making a further ruling on mixed component wheels at that time and instructed parties that a future scope ruling request would be required for that question to be answered through an application of Commerce's substantial transformation test. When Asia Wheel ultimately had to request that analysis be performed, Commerce did exactly what it stated it would do. Asia Wheel and the Importers have dropped all challenges to the actual outcome of that analysis.

Because Commerce properly set the general terms of the scope and later made a scope ruling under those terms, Asia Wheel's and the Importers' claims that they lacked adequate notice prior to Commerce's actions being challenged here are likewise without merit. Commerce gave the general notice that the processing in question could be found to be covered by the scope as is directed by the statute and this Court's precedent. Asia Wheel and the Importers chose to ignore that notice until they were under investigation by CBP for evasion.

Asia Wheel and the Importers now seek to excuse their willful ignorance of the full scope coverage by asking this Court to direct Commerce to interfere with CBP's independent investigation of evasion and suspension of liquidation under that investigation. As Congress empowered CBP to take those exact steps, Commerce had no option but to continue that suspension when it made an affirmative scope ruling, as has been recognized by this Court.

As Asia Wheel's and the Importers' claims lack merit on all points, this Court should also affirm Commerce's scope ruling in full.

## ARGUMENT

This Court reviews the CIT's decisions regarding Commerce's scope determinations de novo. *See, e.g.*, *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310, 1322 (Fed. Cir. 2024), *cert. denied sub nom. Saha Thai Steel Pipe Pub. Co. Ltd. v. Wheatland Tube Co.*, 145 S. Ct. 1309, 221 L. Ed. 2d 396 (2025). However, this Court also gives "great weight to the informed opinion of the Court of International Trade…. Indeed, it is nearly always the starting point of our analysis." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (citation omitted).

In making a de novo review, this Court must affirm Commerce's determination unless the determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020) (en banc) (this Court "must uphold Commerce's determinations unless they are unsupported by substantial evidence on the record, or otherwise not in accordance with law"). This Court has also noted that "{a} party challenging Commerce's scope ruling under the substantial evidence standard 'has chosen a course

13

with a high barrier to reversal.'" *Saha Thai*, 101 F.4th at 1323 (quoting

*King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir.

2012)). Additionally, as matters of scope are "particularly within the

expertise and special competence of Commerce," "Commerce is entitled

to substantial deference with regard to its interpretations of its own

antidumping duty orders." *King Supply*, 674 F.3d at 1348.

Likewise, while the question of whether ambiguity existed in the

scope language that Commerce has interpreted in a scope ruling "is a

question of law reviewed de novo," (*Worldwide Door Components, Inc. v.

United States*, 119 F.4th 959, 968 (Fed. Cir. 2024)), there is a "low

threshold needed to show that Commerce {} justifiably found an

ambiguity." *Novosteel SA v. United States*, 284 F.3d 1261, 1272 (Fed.

Cir. 2002).

Here, Commerce's scope ruling that Asia Wheel and the Importers

challenge was in fact consistent with the plain language of the scope in

question and did not contradict, but carried out, Commerce's prior

determination and statements. The CIT's affirmation of Commerce's

ruling is well-reasoned and provides a strong starting point for this

Court to likewise affirm Commerce. For the reasons set out in this brief,

in the CIT's opinion, and in Commerce's ruling, this Court should find

that Asia Wheel's and the Importers' arguments to the contrary are

without merit and so should likewise affirm Commerce's determination

here.

## I. Asia Wheel's and the Importers' Claims Regarding the Coverage of the Scope Impermissibly Ignore the Full Language of the Scope and of Commerce's Determinations

### a. Commerce did not undertake a k(1) analysis

As a preliminary matter, Asia Wheel and the Importers attempt to

send this Court down an irrelevant path of analysis by claiming that

the question here is one of scope interpretation under 19 C.F.R.

§ 351.225(k)(1). *See PA's Brief* at 22. But Commerce was explicit in its

ruling that it was *not* performing a (k)(1) analysis under that

regulation. *Final Scope Memo*, Appx053 ("we find it unnecessary to

further analyze the criteria set forth in 19 CFR 351.225(k)(1) or to

consider the additional factors provided in 19 CFR 351.225(k)(2).").

As this Court has recognized, the first step for Commerce in

making a scope ruling is to start with the "language of the order itself,"

a step "sometimes referred to as the '(k)(0)' inquiry because it precedes

the analyses under sections (k)(1) and (k)(2) of Commerce's regulation."

*Vandewater Int'l Inc. v. United States*, 130 F.4th 981, 985 (Fed. Cir. 2025).

The factors under 19 C.F.R. § 351.225(k)(1) (and the additional factors under subsection (k)(2)) assist Commerce in determining whether a *form* of merchandise falls within the scope coverage. But that was not the question before Commerce here. The form of the steel wheels exported by Asia Wheel were never argued to be some type of wheel physically different from those that were exported directly from China and unquestionably were covered by the orders. The question before Commerce was if, for purposes of the orders, those wheels should be considered to have *originated* in China or in Thailand.

This Court has held that to answer questions of origin for purposes of applying order coverage, Commerce is entitled to apply Commerce's five-factor substantial transformation test. *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) ("*Bell Supply IV*"). Having found that the scope language here was ambiguous as to the proper determination of origin for the third-country mixed component wheels, Commerce applied that test and properly determined that the Chinese merchandise remained of Chinese origin.

*See Final Scope Memo*, Appx043-036. Asia Wheel and the Importers have dropped all their challenges to Commerce's substantial transformation analysis. *Cf. Asia Wheel Co., Ltd. v. United States*, CIT Slip Op. 25-17, Appx011-012 (the CIT's rejection of Asia Wheel's and the Importers' challenges to the substantial transformation test) ("*CIT Op.*"); *Final Scope Memo*, Appx043-053 (Commerce's rejection of their substantial transformation arguments).

Thus, what Commerce in fact did here was to first undertake a (k)(0) analysis to determine that the scope language was ambiguous as to the question of origin now posed to it and then applied its substantial transformation test to answer that question. *See Final Scope Memo*, Appx031 ("the plain language of the scope is ambiguous as to the status of finished wheels processed in a third country from a mix of {wheel components}") and Appx043 ("{Asia Wheel's} wheels processed in Thailand… are not substantially transformed such that the third-country processing confers country of origin based on the totality of circumstances"). Those analytical steps were fully proper and consistent with guidance from this Court. No analysis of the (k)(1) factors need be

undertaken as the only question placed before the agency was the question of origin.

b. *The full language of the scope shows Asia Wheel's and the Importers' claims to be without merit*

Asia Wheel and the Importers correctly point out in their brief that the primary inquiry in interpreting the scope of an AD/CVD order must be the language of that scope itself. *See PA's Brief* at 21 (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002)). However, their arguments then ignore a necessary corollary to that principle of the primacy of the actual scope language: *all* of that scope language must be considered.

As this Court has stated, the scope of an order must be read so that *all* terms it contains are considered to be "informative and non-superfluous." *King Supply*, 674 F.3d at 1350. An interpretation of scope language that "renders {some} language mere surplusage" must be rejected. *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1073 (Fed. Cir. 2001). And this Court "will not read out {of the scope} a sentence intended by Commerce to be given effect." *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1383 (Fed. Cir. 2017).

As the CIT has tendered the principle: "{t}he court cannot accept an interpretation that renders {a term of the scope} meaningless and 'mere surplusage.'" *SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1275 (Ct. Int'l Trade 2023). *See also, e.g., Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1353 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) (rejecting a reading of scope language that would require "reading out {a} term from the relevant scope language"); *Vietnam Finewood Co. Ltd. v. United States*, 633 F. Supp. 3d 1243, 1255 (Ct. Int'l Trade 2023) (rejecting an interpretation of scope language that "would render the phrase 'as described below' in the first sentence {of the scope} superfluous").

In their arguments here, as they argued before Commerce and the CIT, Asia Wheel and the Importers continue to argue that the term in the scope that states that third-country processing that is covered by the scope of the orders is limited to "the welding and painting of rims and discs from China." *See, e.g., PA's Brief* at 27. But Asia Wheel and the Importers have stridently ignored the full text of even *the sentence* they draw that phrase from:

> The scope includes rims, discs, and wheels that
> have been further processed in a third country,

> ***including, but not limited to***, the painting of
> wheels from China and the welding and painting
> of rims and discs from China to form a steel
> wheel, ***or any other processing*** that would not
> otherwise remove the merchandise from the scope
> of the orders if performed in China.

*See Final Scope Memo*, Appx023 (emphasis added); *see also CIT Op.*,

Appx008 ("The words 'including, but not limited to' would be rendered

meaningless" under Asia Wheel's and the Importers' reading of the

scope).

Commerce adopted that language at the request of the domestic

petitioner in the original AD/CVD investigations to *clarify* the scope

coverage. *See Prelim. Inv. Memo*, Appx135 ("we will…preliminarily

clarify the scope of these investigations as follows"); *Final Inv. Memo*,

Appx123 ("On March 1, 2019, the petitioner requested that the scope of

the investigation be clarified…."). From the beginning of Commerce's

investigations into certain steel wheels from China, the language of the

scope has covered wheel parts, both an outer wheel rim or an inner

wheel disc, as well as the assembled wheel, whether exported

assembled or as separate elements. *See Certain Steel Wheels 12 to 16.5*

*Inches in Diameter From the People's Republic of China: Initiation of*

*Less-Than-Fair-Value Investigation*, 83 Fed. Reg. 45,095, 45,100 (Dep't

Commerce Sept. 5, 2018) (Commerce's notice of initiation: "The scope of this investigation is certain on-the-road steel *wheels, discs, and rims* ..." (emphasis added)). If Zhejiang Jingu/Asia Wheel had exported the wheel parts from China or wheels finished in China from those parts directly to the United States, that merchandise unambiguously would have been covered by the scope and subject to the AD/CVD duties.

When the further question of third-country finishing arose as exporters sought ways to elude the orders, Commerce addressed the question of a wheel produced from a Chinese rim and disc by issuing a decision to "Clarify the Scope." *See Inv. Prelim. Memo*, Appx134 ("Clarify the Scope of the Investigations"). In that clarification, Commerce recognized that "the scope of this investigation makes clear that steel wheels, discs, and rims from China are covered by the scope." *Id.*, Appx137.

As already noted above, Commerce specifically stated that the specific question it was addressing—based on how it read petitioner's request—in that clarification was for the third-country finishing of a Chinese rim together with a Chinese disc. *Id.*, Appx137-138 ("we understand the petitioner's statements...to be requesting that rims and

21

discs from China that have been further processed in a third country into finished steel wheels be included within scope."). Therefore, Commerce added that specific production process ("the welding and painting of rims and discs from China") to the scope language as one explicit example of covered third-country processing. See *Inv. Prelim. Mem*o, Appx138-139; *Final Inv. Memo*, Appx122. This clarifying language was definite that the scope did cover Chinese rims and Chinese discs that had been processed together in a third country before importation to the United States. But the full language Commerce included was also explicit that the coverage was *wider than and not limited to* that stated example of welding and painting of a rim and a disc from China.

As this Court has explained, clarification of scope language does "not change the scope of the order or alter its express terms." *King Supply*, 674 F.3d at 1351. Thus, Commerce's *clarification* cannot be understood to have changed the products covered by the scope, but instead only provided insight into what *some* of those covered products were. So, as Commerce there stated, the scope of the Order before and

after the clarification covered "steel wheels, discs, and rims from China." *Inv. Prelim. Memo*, Appx137.

By clarifying that the scope of the orders did in fact cover wheels finished in a third country from "rims and discs from China," Commerce cannot be understood as having stated in any way that other types of third country finishing of those Chinese wheels, and rims and/or discs, were *not* covered. Commerce was unambiguous on that point, including explicitly in the scope that coverage "includ{ed}, *but {was} not limited to*" merchandise produced through that particular series of manufacturing steps. The coverage also included "*any other* processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China." *Final Scope Memo*, Appx023 (emphasis added). "Any other" cannot mean "no other."

Asia Wheel and the Importers argue that because Commerce added the term "from China" to "rims and discs" in the petitioner's proposed clarifying language, Commerce must be understood to at that time have been limiting the entire scope coverage to where both the rim and the disc was from China. *PA's Brief* at 22. But that claim ignores that the "from China" was purposefully placed by Commerce only *after*

the unambiguous statement that the coverage of third-country processing is "*including, but not limited to*" that "from China" merchandise that was given as one example of covered third-country processing. *See Final Scope Memo*, Appx023 ("The scope includes rims, discs, and wheels that have been further processed in a third country, including, but not limited to, the painting of wheels from China and the welding and painting of rims and discs from China to form a steel wheel …"). Had Commerce in fact intended that the "from China" term apply to all types of processing, it would have included that phrase to modify the "rims, discs, and wheels" that are given before the "including, but not limited to" phrase; instead, it modified only the "rims and discs" example that comes only after the "not limited to."

Commerce's clear language was that the "rim and disc" "from China" wheel was certainly covered, not that any other product was not covered. That Commerce affirmatively addressed one type of processing cannot be understood to mean that Commerce also meant that a different, unaddressed type of processing was not covered. *See, e.g.*, *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88

(Fed. Cir. 2012) ("The absence of one thing does not prove the opposite").

### c. Commerce properly found that the scope was ambiguous as to a production process it did not address during the original investigations

Moreover, it is neither telling nor even surprising that Commerce would not attempt during the investigations to list all types of merchandise and processing that were intended to be covered under the scope of the orders. On the contrary, it *is* expected that Commerce will need to continue to deal with questions of scope after an order has been issued.

The statute directs Commerce to provide as the scope of an AD or CVD order "a description of the subject merchandise, in such detail as the administering authority deems necessary." 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2). Because the scope is set out only in the detail necessary at the time, it *is expected* that Commerce will return to the language and provide further interpretation as additional questions of scope coverage arise: "Issues arise regarding whether a product falls within the scope of an ADD or CVD order, in part because federal regulations require Commerce to write the descriptions in 'general terms.'" *Bell Supply Co.,*

*LLC v. United States*, 393 F. Supp. 3d 1229, 1236–37 (Ct. Int'l Trade 2019) ("*Bell Supply VI*").

That is what Commerce did here: returning to a question of scope and origin that had not been resolved during the investigations and then properly applying the analytic framework that has been approved by this Court for Commerce to answer a question of origin.

In the final scope determination during the original AD/CVD investigations, Commerce was explicit that it was not then addressing the question of mixed component wheels. Commerce informed all parties that

> Commerce ***does not foreclose a further analysis of substantial transformation*** should a product be completed in a third country ***from a mix of rim and disc parts*** from China and a third country, ***if an interested party requests a scope ruling*** and/or to address a future circumvention concern.

*Final Inv. Memo*, Appx124.

Commerce was unequivocal that it would address the question of wheels "completed in a third country from a mix of rim and disc parts from China and a third country" through a substantial transformation analysis *if and when* a party made a scope ruling request *in the future*.

This statement also makes clear that Commerce *was not* answering that question at that time. Commerce cannot possibly be understood to be stating that it was answering the mixed components question while conversely also stating that it was not answering that question.

Asia Wheel and the Importers attempt to dismiss Commerce's direction that the question would need to be answered in a future scope ruling by claiming that this was only a general statement of Commerce's "inherent authority" to apply a substantial transformation analysis. *See PA's Brief* at 24-25, 41-42. Asia Wheel's and the Importers' claim is entirely without merit.

First, Commerce clearly did not make a general statement about "inherent authority." Commerce said that it would address *this specific question* regarding wheels "completed in a third country from a mix of rim and disc parts from China and a third country." *Final Inv. Memo*, Appx124. Commerce did not simply recognize that it had the authority to apply a substantial transformation analysis generally; it specifically stated that it would apply that analysis to *this* question if asked. Asia Wheel's and the Importers' claim otherwise has no basis in what the agency actually said.

Moreover, even if Commerce had not explicitly stated what question it would apply that analysis to and at what time, Commerce could not have been understood to be saying, as Asia Wheel and the Importers claim, that potentially Commerce "might in the future revisit its finding" on mixed component wheels but for the time was ruling they were not covered by the scope. *See, e.g.*, *PA's Brief* at 38. Commerce could not lawfully take such an approach.

If Commerce had in fact had held that mixed component wheels were excluded from the scope in setting the scope of the orders during the investigations, it could not have later returned to that question after issuing the AD and CVD orders and found instead that they were included. Commerce's determinations on scope questions during an investigation are binding on its future interpretations of that scope so set. *See, e.g.*, *Eckstrom*, 254 F.3d at 1072 ("Commerce cannot 'interpret' an antidumping order so as to change the scope of that order"). Commerce cannot "temporarily" answer a scope question while planning to return to it in the future and possibly change that answer. So Commerce's statement in the investigations here that it would address a certain question only in the future cannot be imbued with any

meaning other than that Commerce was not answering that question at that time.

Indeed, this line of argument from Asia Wheel and the Importers would entirely undercut their main argument here. If Commerce has the "inherent authority" to revisit a scope question after once deciding on that issue, which Asia Wheel and the Importers claim Commerce was then recognizing, then Commerce was simply using that "inherent authority" to revisit that question in the later scope determination Asia Wheel and the Importers now challenge.

But because Commerce cannot reinterpret a scope to both exclude and include the same merchandise, Asia Wheel's and the Importers' conflicting arguments are simply in error. In actuality, as Commerce stated, it was not answering the mixed component question, it was expressly leaving the question open pending a future request for the question to be answered.

Asia Wheel and the Importers also attempt to make much of Commerce's use of the phrase "the existing language." They argue that when Commerce stated that this "existing language sufficiently conveys the concept that third-country processing of a steel wheel must be of

rims and discs produced in China," Commerce must have meant that

"{t}he final scope language adopted by Commerce thus requires that

both the rims and the discs 'must' originate from China…." *PA's Brief* at

24; *see also, e.g., id.* at 27, 34, 40, *etc.*

But Asia Wheel's and the Importers' claim relies on an unspoken

assumption they hope will be accepted uncritically: that the "existing

language" Commerce referred to meant the entire scope and the full

coverage. Asia Wheel and the Importers offer no support for that

assumption, and this Court should reject these arguments that crumble

when this unfounded and untested assumption is not accepted.

Indeed, a full reading of Commerce's statements makes clear that

Commerce was not using that term to mean the full scope coverage.

Commerce instead was explicit that what it was addressing in these

statements was "*the clarifying language* in question." *Final Inv. Memo*,

Appx122 (emphasis added); *see also id.*, Appx123 ( "the plain language

*of this clarification* as provided by the petitioner and adopted by

Commerce in the preliminary scope finding;" emphasis added); Appx124

("the adoption of *the clarification language*;" emphasis added). That

"clarifying language" "explicitly identified both rims and discs;" and

Commerce discussed what it held was "the intent of *this* language." *Id.*,

Appx122 (emphasis added). Commerce then referred to this language as

"{t}he plain language of this clarification" and addressed what it

"understood *this clarification* to address:" "exactly the circumstance

that was explicitly presented, the assembly (and surface finishing) of

steel wheels in a third country from all constituent parts produced in

China." *Id.*, Appx123 (emphasis added). This "express language" was

the language of the clarification addressing "rim and disc" wheels and

that example of coverage as added to the scope, not the scope language

nor coverage in full.

In contrast, Commerce stated that the separate question and

different language of mixed component wheels "was presented for the

first time in the rebuttal stage of this proceeding." *Id.*, Appx124.

Commerce referred to language suggested to address *that* issue as "the

*further* clarification language proposed in the respondent/importer's

affirmative scope comments." *Id.* (emphasis added). Commerce

expressly rejected adopting that language. *See id.*

Rather than stating that mixed component wheels were not

covered by the scope, Commerce explained that such wheels were not

the type of merchandise it had clarified was covered by the scope in the preliminary ruling during the investigations. The question of whether mixed component wheels were covered was expressly treated by Commerce as a *separate* question, a question that Commerce was explicit it would need to address in a future determination. As this Court has explained, whether scope language is ambiguous is considered in regard to the particular merchandise at issue. *OMG, Inc. v. United States*, 972 F.3d 1358, 1364 (Fed. Cir. 2020). That Commerce was unambiguous regarding one type of wheel does not address whether the scope was ambiguous regarding other merchandise.

As discussed above, Commerce's scope language cannot be interpreted to render parts of the language "mere surplusage." The same is true regarding Commerce's scope rulings. What Commerce did, and did not, rule cannot correctly be understood nor applied if parts of the agency's rulings are simply ignored. Yet that is exactly what Asia Wheel and the Importers do, openly claiming that Commerce simply made a "superfluous reference to its ability to conduct a substantial transformation analysis as part of a scope inquiry." *PA's Brief* at 25.

But Commerce's full determination, including the uncompromising statement that the question of mixed component wheels remained open, cannot be parsed into futility by simply ignoring the inconvenient parts. The only reading of that determination that fairly gives meaning to all points it covered is that Commerce limited its findings to its clarification that "rim and disc" wheels were covered and that the further question of whether the scope also covered mixed component wheels was left ambiguous at that time.

Based on the facts before it, this Court must affirm Commerce's determination that the scope was not settled as to the question of mixed component wheels before the scope inquiry at issue here, and so Commerce properly used its authority to address that ambiguity during the challenges scope inquiry.

## II. Commerce Provided the Adequate Notice Required under U.S. Law; an Exhaustive List of All Possible Products Covered Was Never Required

### a. Commerce provides a general description of the covered merchandise, which provides fair warning to importers

Asia Wheel's and the Importers' arguments that they lacked adequate notice that Commerce would address the question of mixed component wheels relies in large part on their claims that Commerce

had ruled in the "definitive" during the investigations that mixed component wheels were outside the scope of the orders. *See, e.g.*, *PA's Brief* at 40.

However, as set out above, Commerce made no such ruling during the investigations. Commerce instead confirmed that wheels made from Chinese rims and discs were covered by the scope but declined to rule on other wheels, stating expressly instead that it would apply the substantial transformation test to answer that question in a future scope ruling. Asia Wheel's and the Importers' claims of a lack of adequate notice are balanced on their deficient claims regarding Commerce's statements during the investigations and so are equally without merit.

Asia Wheel's and the Importers' argument that any possible notice that Commerce did give was limited to a "lone sentence" likewise lacks a basis in the facts or the law. *See PA's Brief* at 39. Asia Wheel and the Importers essentially argue that, because Commerce did not explicitly name mixed component wheels among the production methods that were covered under the scope, Commerce failed to provide adequate notice that those wheels were covered. Effectively, what they claim is

that if the particular product type was not positively listed as covered, it was excluded from the scope. That position lacks any merit.

First, as already covered in this brief, Asia Wheel's and the Importers' arguments that Commerce's statement should simply be ignored as meaningless surplusage are without merit. Commerce specifically indicated that it was not issuing a ruling on mixed component wheels at that time and gave explicit instruction for what action would need be taken by any party wishing to obtain that ruling. In that statement, Commerce *specifically* stated that this direction for future action applied to wheels "completed in a third country from a mix of rim and disc parts from China and a third country." *Final Inv. Memo*, Appx124. A claim that this statement was not specific cannot withstand scrutiny.

Additionally, even if Asia Wheel's and the Importers' claim that Commerce's statement was not specific did comport with the facts of this case, even a nonspecific statement that wheels, rims, and discs were covered would be sufficient to give adequate notice under the governing statute and guidance from this Court.

As already discussed in this brief, the statute directs Commerce to issue a scope that provides "a description of the subject merchandise, in such detail as the administering authority deems necessary." 19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2). Commerce is not required to provide an exhaustive list of all forms and varieties of the merchandise that are and are not covered.

As this Court has recognized, after issuing a scope setting out the coverage in those general terms, Commerce has the authority to return to the scope to address questions of particular coverage as they arise in order to interpret and clarify that scope. *See, e.g., Duferco*, 296 F.3d at 1096 ("scope orders must necessarily be written in general terms…and the Commerce Department enjoys substantial freedom to interpret and clarify its antidumping orders{.}" (quotation marks omitted)).

Here, Commerce was clear from the beginning of the investigations that the scope had always included "wheels, discs, and rims" from China. Commerce then clarified that the covered wheels, discs, and rims included wheels, discs, and rims that had been processed further in a third country. Commerce provided *explicitly* non-exhaustive examples of painting wheels and welding and painting a

Chinese rim to a Chinese disc as instances of that coverage. Then Commerce again stated, even more explicitly, that that first clarification did not address other mixed component wheels and gave warning that a future analysis would need be requested to address those other wheels.

Any reasonable importer would have been notified by these statements and by the purposefully expansive language of the scope that other Chinese discs or Chinese rims that *had not* been specifically addressed by Commerce could also be covered by such a scope— explicitly including those finished in a third country in other ways.

Commerce's specific statement regarding the application of a future substantial transformation analysis for mixed component wheels went beyond the required general description of subject merchandise and gave specific notice to all parties on that particular type of merchandise. The generally expansive statement that the scope included "any other processing that would not otherwise remove the merchandise from the scope of the proceeding if performed in China" was in itself sufficient to give importers notice that the scope was not limited to the "rim and disc" example." *See Final Scope Memo*, Appx023

(scope language). More was not required for Commerce to later properly return to the question of other specific merchandise. As stated by the CIT here,

> adequate notice is not the same as certainty that a product will or will not fall within the scope of an order. Instead, adequate notice need only allow an importer to reasonably interpret what merchandise is included in the order.

*CIT Op.*, Appx014.

Importers of the subject merchandise here were not only given adequate general notice that would allow a reasonable importer to conclude that a mixed component wheel could be held to be in scope. They were explicitly warned by Commerce that this question was not yet resolved and that they should make a scope ruling request in order to receive the answer to that question. Asia Wheel and the Importers chose to act without seeking such clarification until forced to do so. This Court should not condone an excuse of willful ignorance under the pretense of a lack of adequate notice.

b. *Commerce properly declined to instruct CBP on how that agency should apply its independent authority*

Commerce properly set out an adequate description of the coverage of the scope in the first place, then gave specific warning on

the open question of mixed component wheels, and then properly

returned to that question of specific coverage when it was asked. In

returning to that question, Commerce properly applied the substantial

transformation test that has been approved by this Court to answer

such questions of origin. Having made an affirmative scope ruling

through that analysis, Commerce then properly applied its regulations

in 19 CFR § 351.225(l) that govern the liquidation of entries following a

scope determination. *See Final Scope Memo*, Appx057, Appx062-063.

As was explained by the agency in its determination, section 225(l)

sets out that Commerce will "continue suspension of liquidation if a

final ruling finds the relevant products included within the scope." *Id*.,

Appx057; *see also* 19 CFR § 351.225(l)(3) (prior version).[3] This is what

Commerce properly did here, ordering CBP to continue the suspension

of liquidations that CBP, under its own independent authority, had

already legally suspended as part of CBP's ongoing EAPA investigation.

---

[3] The scope determination here was made under the pre-September
2021 version of section 351.225. *See, e.g., CIT Op*., Appx016, fn.1.
However, as both the prior and current versions of section 225(l)(3)
direct Commerce to continue any suspension of liquidation upon
making an affirmative scope ruling, the outcome would be the same
here regardless of the version that was applied.

*See, e.g., Final Scope Memo*, Appx062-063; see also *EAPA Initiation*, Appx220 (CBP's suspension).

This Court has held that the terms of § 351.225(l) are "clear and unambiguous;" and has rejected the application of "{a}ny other result {that} would also be inconsistent with 19 C.F.R. § 351.225(l)." *Sunpreme Inc. v. United States*, 946 F.3d at 1318. Commerce was *required* to apply section 225(l) as this Court has held in prior cases, and so, under the plain terms of that regulation, was *required* to continue the suspension CBP already had in place.

Asia Wheel and the Importers point to no authority that states there are any instances where Commerce may ignore section 225(l) and terminate existing suspensions despite having made an affirmative scope ruling. *See PA's Brief* at 45-50. Instead, they attack this Court's ruling in *Sunpreme* by claiming that its directive that section 225(l) be applied only applies when CBP has made an independent "determination" of coverage to suspend the liquidation. *See PA's Brief* at 49 (arguing that CBP here "was unable to determine" coverage).

Their argument improperly seeks to elevate a passing comment by the Court to binding precedent. While the Court did note in *Sunpreme*

that CBP had made its own ministerial determination in that case that the goods in question were in-scope, entirely absent from the Court's decision is any reliance on that fact as essential to the outcome. *See Sunpreme*, 946 F.3d at 1317-18, 1321.

Instead, the Court straightforwardly explained that the proper question was whether CBP had properly suspended liquidation of entries, and, if so, then "subsection {225}(l)(3) instead dictates that the existing suspension 'will continue.'" *Id.* at 1319 (emphasis added). Nothing in *Sunpreme* nor in section 225(l) limits the directive of that regulation *only* to a certain type of suspension by CBP. Both instead direct Commerce to "continue suspension of liquidation" without limiting that directive to only some suspensions.

Here, as Commerce correctly explained in its determination memo, CBP had already suspended liquidation of Asia Wheel's shipments under CBP's own wholly independent authority to investigate evasion of AD/CVD orders under the EAPA statute (19 U.S.C. § 1517(e)). *See Final Scope Memo*, Appx062; *see also EAPA Initiation*, Appx220. The statute in fact *requires* that CBP suspend liquidation where it makes an affirmative interim EAPA determination.

19 U.S.C. § 1517(e)(1). That is what CBP had done here. The standard for CBP to suspend liquidation under its EAPA authority is not a matter of CBP making a scope determination, but an entirely separate standard of CBP finding a reasonable suspicion of evasion. *See* 19 U.S.C. § 1517(e). But liquidation is still suspended.

Moreover, even if Asia Wheel's and the Importers' claim that *Sunpreme* required a coverage determination by CBP had any merit, CBP *expressly* made such a determination here during its EAPA investigation. *EAPA Initiation*, Appx218 (CBP holding that "discs from China that have been further processed in a third country to form steel wheels would not remove the merchandise from the scope of the orders").

And so, as set out by this Court in *Sunpreme*, once CBP had suspended liquidation for the merchandise under its independent authority under the "reasonable suspicion" standard of 19 U.S.C. § 1517(e) or by making a ministerial coverage determination, section 225(l) gave Commerce no leeway to act in any way other than as Commerce did. Once Commerce made an affirmative scope

determination it had to instruct CBP to continue any existing suspensions.

This Court has held that independent authority given to CBP is not limited temporally by when Commerce applies its scope ruling authority. For example, in a 2020 decision, this Court addressed a challenge by an importer—parallel to Asia Wheel's and the Importers' challenge here—to Commerce's instruction in a scope determination to CBP to "{c}ontinue to suspend liquidation of entries;" which the importer argued "improperly assess{ed} duties on pre-initiation imports." *Star Pipe Prod. v. United States*, 981 F.3d 1067, 1078 (Fed. Cir. 2020). There, CBP had suspended liquidation under its own enforcement authority. This Court rejected the importer's argument for a number of reasons, and explained instead that,

> Even if…Commerce's liquidation instruction were clarified to state that it did not extend to pre-initiation entries, that would not impact or prevent CBP from pursuing an enforcement action under § 1592. 19 C.F.R. § 351.225(l)(3) only limits Commerce's authority to assess duties in the context of a scope inquiry; that regulation does not restrict CBP's authority under § 1592 to assess penalties for fraudulent or negligent violations. Regardless of Commerce's instruction to CBP … CBP may independently determine that Star Pipe was negligent or fraudulent in its

> failure to pay duties on its {entries}, even if those
> {entries} were imported prior to the initiation of
> the scope inquiry.

*Id*. at 1079. Further, in *Sunpreme*, this Court also held that CBP's suspension authority under 19 U.S.C. § 1500(c) was also not limited by when Commerce took a scope action. *Sunpreme*, 946 F.3d at 1318-1321.

Ignoring these holdings, Asia Wheel and the Importers attempt to provide some underpinning for their argument by citing from the CIT's decision in *Aspects Furniture*. See *PA's Brief* at 47-48. But that determination is entirely inapposite. In *Aspects Furniture*, Commerce had made a *negative* scope ruling regarding certain merchandise when CBP had referred the question to Commerce. *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1267 (Ct. Int'l Trade 2022). There, CBP "apparently continued to include merchandise in the EAPA investigation that Commerce had deemed to be outside the scope of the Order." *Id*. *Aspects Furniture* did not address the proper steps when Commerce makes an *affirmative* scope determination or what *Commerce* should do following such a determination. The lower courts' holding in *Aspects Furniture* that CBP cannot ignore Commerce's

directives provides no support for the argument that Commerce should be instructed to ignore CBP's actions here.

Asia Wheel and the Importers then attempt to dismiss the relevance of another CIT decision in *Diamond Tools* by arguing that there the challenge was to "CBP's EAPA authority directly," not Commerce's scope ruling authority. *PA's Brief* at 49-50. Asia Wheel and the Importers do not explain why the challenge to CBP's EAPA authority directly in *Aspects Furniture* is relevant here but a challenge to CBP's EAPA authority in *Diamond Tools* is not. *See id.*

In *Diamond Tools*, the CIT held that CBP's authority to suspend liquidations is not bound by Commerce's separate authority to take the same action in different circumstances. *See Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1344 (Ct. Int'l Trade 2021). The CIT explained that Commerce's determinations do not "diminish Customs' authority under the EAPA to apply Commerce's affirmative covered merchandise determination…." *Id.* at 1351. The court continued that allowing Commerce to dictate how CBP applies its statutory authority to conduct EAPA investigations would "contravene Congress' expressed intent for the statute…. Such an outcome would be contrary

to the congressional intent underlying the EAPA statute and Customs' ability to exercise its statutory authority." *Id*.

As noted above, CBP's authority to suspend liquidation in an EAPA investigation under 19 U.S.C. § 1517(e) is entirely independent of Commerce. CBP does not need to seek any approval from Commerce to apply that authority and CBP's actions are not under Commerce's review. Asia Wheel's and the Importers' argument that Commerce should be ordered by this Court to override CBP's actions would require this Court to first override Congress' statutory grant of independent suspension authority to CBP. This Court must refuse to take such an action.

Instead, where CBP has exercised its independent authority to suspend liquidation and then Commerce makes an affirmative scope determination, *Sunpreme* and 19 C.F.R. §351.225(l) direct that Commerce must continue that suspension. Commerce correctly did so here, and that action should be affirmed by this Court.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

As was stated by the CIT, "Commerce's determination {here} is supported by substantial evidence and in accordance with law." *CIT*

*Op.*, Appx015. Asia Wheel's and the Importers' claims that Commerce somehow ruled that mixed component wheels are outside of the scope coverage by ruling on another type of wheel processing—while expressly declaring that it would need to further analyze the mixed component question in the future—lacks support in the facts of this case. Instead, Commerce properly provided the general description of the coverage as instructed by statute and stated expressly that this coverage was not limited to the one given example.

Because it properly gave the necessary general guidance that all wheels, rims, and discs from China—including those further processed in a third country—were covered, Commerce gave adequate notice to importers that rims or discs further processed in a third country were potentially covered. Indeed, Commerce went beyond the requirement of adequate notice and gave specific notice regarding the open question of mixed component wheels. And as is anticipated under the statutory scheme, Commerce then addressed an open question of coverage when that question was properly placed before the agency and applied the approved analysis to reach an affirmative scope ruling on that question.

Having done so, Commerce then made the obligatory decision to continue all pre-existing suspensions of liquidation of the merchandise.

As Commerce's actions were proper on all points and fully consistent with the statute, with Commerce's own regulations, and with this Court's decisions, we respectfully request that this Court reject the arguments and claims made by Asia Wheel and these Importers and sustain Commerce's scope determination on all points.

Respectfully submitted,

/s/ Roger Schagrin
Roger Schagrin
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 7th St. NW Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Dexstar Wheel*

Dated: December 15, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-1689

**Short Case Caption:** Asia Wheel Co., Ltd. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 9,332 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 12/15/2025

Signature: /s/ Roger Schagrin

Name: Roger Schagrin