## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ASIA WHEEL CO., LTD., TRAILSTAR LLC, LIONSHEAD SPECIALTY TIRE & WHEEL, LLC, DEXTER DISTRIBUTION GROUP LLC, FKA TEXTRAIL, INC.

Plaintiffs-Appellants,

v.

UNITED STATES,

and

DEXSTAR WHEEL DIVISION OF AMERICANA DEVELOPMENT, INC.,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in Consol. Case No. 1:23-CV-00096
Judge Gary S. Katzmann

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Jay C. Campbell
Allison Kepkay
Matthew W. Solomon
Cristina Cornejo
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
Counsel to Plaintiff-Appellant Asia Wheel
Co., Ltd.

Nancy A. Noonan
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006
(202) 857-6000
Counsel to Plaintiff-Appellant Dexter
Distribution Group LLC, fka TexTrail Inc.

January 20, 2026

Jordan C. Kahn
GRUNFELD DESIDERIO LEBOWITZ
SILVERMAN & KLESTADT, LLP
1201 New York Ave., NW Ste. 650
Washington, DC 20005
(202) 783-6881
Counsel to Plaintiff-Appellant
TRAILSTAR LLC

R. Kevin Williams
Mark Ludwikowski
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, IL 60601
(312) 985-5900
Counsel to Plaintiff-Appellant Lionshead
Specialty Tire & Wheel, LLC

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 2025-1689 |
| **Short Case Caption** | Asia Wheel Co., Ltd. v. US |
| **Filing Party/Entity** | Asia Wheel Co., Ltd. v. US |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/20/2026

Signature: /s/ Jay C. Campbell

Name: Jay C. Campbell

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Asia Wheel Co., Ltd. | | Zhejiang Jingu Co., Ltd., a publicly traded company in China, indirectly owns 99.99% of Asia Wheel Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Walter J. Spak, White & Case LLP | Chunfu Yan, White & Case LLP | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2025-1690 |
| **Short Case Caption** | Asia Wheel Co., Ltd. v. US |
| **Filing Party/Entity** | TRAILSTAR LLC |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 1/20/2026

Signature: /s/ Jordan C. Kahn

Name: Jordan C. Kahn

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| TRAILSTAR LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Kavita Mohan | | |
| Alan R. Klestadt | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-1692 |
| **Short Case Caption** | Asia Wheel Co., Ltd. v. US |
| **Filing Party/Entity** | Lionshead Specialty Tire & Wheel, LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/20/2026

Signature: /s/ R. Kevin Williams

Name: R. Kevin Williams

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br> ☑ None/Not Applicable |
| Lionshead Specialty Tire & Wheel, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Robert Kevin Williams | Mark Rhett Ludwikowski | Kelsey Christensen |
| Clark Hill PLC | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-1693 |
| **Short Case Caption** | Asia Wheel Co., Ltd. v US |
| **Filing Party/Entity** | Dexter Distribution Group LLC F/K/A Textrail, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 01/20/2026

Signature:  /s/ Nancy A. Noonan

Name:  Nancy A. Noonan

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Dexter Distribution Group LLC F/K/A Textrail, Inc. | | Dexter Distribution Group LLC (formerly TexTrail, Inc.) is indirectly majority owned by Brookfield Corporation, a publicly-held company |
| | | and by Brookfield Business Partners, a publicly-held company. Brookfield Corporation and Brookfield Business Partners are |
| | | affiliated with Brookfield Infrastructure Partners, Brookfield Renewable partners, and Brookfield Reinsurance, all of which are publicly-held companies. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable          ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

ARGUMENT ........................................................................................................3

I.  THE GOVERNMENT AND DEXSTAR FAIL TO
    DEMONSTRATE THAT COMMERCE'S
    MISINTERPRETATION OF THE SCOPE SHOULD BE
    SUSTAINED ............................................................................................3

    A.  Commerce determined in the original AD/CVD
        investigations that wheels made in a third country with discs
        or rims from China (but not both) are outside the scope .................4

    B.  The record lacks substantial evidence for Commerce's claim
        that it deferred consideration of the "rims or discs from
        China" scope issue in the original AD/CVD investigations ..........10

    C.  Excluding wheels made with rims or discs from China (but
        not both) is not inconsistent with the full scope language .............12

    D.  Contrary to Dexstar's argument, Commerce _did_ analyze the
        (k)(1) sources, as required by the regulations ................................14

II. THE GOVERNMENT AND DEXSTAR FAIL TO
    DEMONSTRATE THAT COMMERCE LAWFULLY
    DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION
    OF IMPORTS ENTERED BEFORE IMPORTERS HAD
    ADEQUATE NOTICE OF AD/CVD LIABILITY .................................15

    A.  The Government and Dexstar mischaracterize Plaintiffs-
        Appellants' arguments regarding adequate notice .........................16

    B.  Commerce cannot lawfully apply its own regulations in a
        manner that would violate the broader due process principle
        requiring it to provide importers with adequate notice before
        imposing AD/CVD liability ...........................................................19

C.      Commerce, not CBP, has the ultimate authority to determine not only whether but *when* imported merchandise is subject to an AD/CVD order .....................................................................25

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aspects Furniture Int'l, Inc. v. United States,*
    607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) .......................................................28

*Diamond Tools Tech. LLC v. United States,*
    545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) .......................................................27

*Mid Continent Nail Corp. v. United States,*
    725 F.3d 1295 (Fed. Cir. 2013) ...................................................19, 20, 22, 26

*Star Pipe Prod. v. United States,*
    981 F.3d 1067 (Fed. Cir. 2020) ..........................................................................27

*Superior Commercial Solutions LLC v. United States,*
    Court No. 24-cv-00052-JCG, Slip Op. 25-147 at 26 (Nov. 26, 2025) ...............28

*Tai-Ao Aluminum (Taishan) Co. v. United States,*
    391 F. Supp. 3d 1301 (Ct. Int'l Trade 2019) .......................................................23

*Tai-Ao Aluminum (Taishan) Co. v. United States,*
    983 F.3d 487 (Fed. Cir. 2020) ....................................................................passim

## STATUTES AND REGULATIONS

19 U.S.C. § 1517(a)(3)..........................................................................25, 26, 28

19 U.S.C. § 1517(b)(4)(a)(i) ...............................................................................26

19 U.S.C. § 1592..................................................................................................27

19 C.F.R. § 351.225(c)(ii)(C)(2)..........................................................................21

19 C.F.R. § 351.225(d) ........................................................................................21

19 C.F.R. § 351.225(e)..........................................................................................21

19 C.F.R. § 351.225(k)(1).......................................................................................4

19 C.F.R. § 351.225(l) ...................................................................................passim

Enforce and Protect Act,
    19 U.S.C. § 1517(e) ....................................................................passim

## ADMINISTRATIVE DETERMINATIONS

*Aluminum Extrusions from the People's Republic of China*,
    81 Fed. Reg. 15039 (Dep't Commerce Mar. 21, 2016) ("*Tai-Ao Initiation
    Notice*") ...............................................................................................23

*Aluminum Extrusions from the People's Republic of China*,
    81 Fed. Reg. 79,444 (Dep't of Commerce Nov. 14, 2016) ("*Tai-Ao
    Preliminary Determination*").............................................................23

*Certain Steel Trailer Wheels 12 to 16.5 Inches From the People's Republic of
    China: Antidumping Duty and Countervailing Duty Orders*,
    84 Fed. Reg. at 45,954 ........................................................................14

## **INTRODUCTION**

Plaintiffs-Appellants Asia Wheel Co., Ltd., Dexter Distribution Group LLC, fka TexTrail Inc., TRAILSTAR LLC, Lionshead Specialty Tire & Wheel, LLC, (collectively, "Plaintiffs-Appellants") reply to the response briefs submitted by Defendant-Appellees the United States and U.S. Department of Commerce (collectively, the "Government") (ECF No. 37) ("Gov't. Response Br."), and Dexstar Wheel Division of Americana Development, Inc. ("Dexstar" or "Petitioner") (ECF No. 36) ("Dexstar Response Br.").

The Government and Dexstar fail to demonstrate that the U.S. Department of Commerce's ("Commerce") misinterpretation of the scope of the antidumping duty ("AD") and countervailing duty ("CVD") orders on certain steel wheels 12 to 16.5 inches in diameter from China ("*AD/CVD Orders*") in its final scope ruling issued on April 11, 2023, ("*Final Scope Ruling*") should be sustained. As established by Commerce's final scope determination issued in the original AD and CVD investigations on July 1, 2019 ("*Final Scope Decision Memo*"), rather than defer the importers' explicit question of whether wheels made in third countries with rims or discs from China (but not both) were within scope, Commerce answered the question *twice* – both times with a resounding "no." *See* Appx123, Appx124. Moreover, excluding wheels made with rims or discs from China is not inconsistent with the plain language of the third-country processing provision because this provision can

apply to a multitude of other production scenarios that have not already been reviewed by Commerce, such as Chinese-origin rims finished or painted in a third country, Chinese-origin discs finished or painted in a third country, or **parts** of Chinese-origin rims and **parts** of Chinese-origin discs that are finished and painted in a third country.

In the alternative, should this Court affirm Commerce's determination that wheels made in Thailand with rims or discs from China (but not both) are within scope, the Government and Dexstar fail to demonstrate that Commerce lawfully directed CBP to continue to suspend the liquidation of imports entered before importers had adequate notice of potential AD/CVD liability. Here, Plaintiffs-Appellants do not seek certainty of scope coverage, but rather adequate notice, a fundamental due process principle with which Commerce must comply when applying the suspension regulation, 19 C.F.R. § 351.225(l). Courts have held that adequate notice requires more than Commerce's statement of intent to consider a scope question at a later date, which is at most what occurred here during the original AD/CVD investigations.

Finally, contrary to the Government's and Dexstar's argument, it is Commerce, not U.S. Customs and Border Protection ("CBP"), that is the ultimate authority on the scope of AD/CVD orders. This authority includes deciding not just **whether** merchandise is within scope but **when** imports of the merchandise first

became subject to AD/CVD orders. Thus, Commerce must instruct CBP that imports of wheels made in Thailand from rims or discs from China (but not both) were not "covered merchandise" before the initiation of its scope inquiry in this case and instruct CBP to stop suspending the liquidation of such imports entered before the initiation date.

## ARGUMENT

The Government and Dexstar fail to demonstrate that the following decisions by Commerce in the *Final Scope Ruling* should be sustained as supported by substantial evidence and/or in accordance with law: (1) Commerce's misinterpretation of its own scope determination in the original AD/CVD investigations, which unequivocally stated that wheels manufactured in a third country with only Chinese-origin discs *or* rims (but not both) are outside the scope; and (2) Commerce's unlawful continuation of CBP's prior suspension on liquidation of imports entered before importers had adequate notice of AD/CVD liability.

## I. THE GOVERNMENT AND DEXSTAR FAIL TO DEMONSTRATE THAT COMMERCE'S MISINTERPRETATION OF THE SCOPE SHOULD BE SUSTAINED

The Government and Dexstar fail to demonstrate that Commerce's misinterpretation of the scope should be sustained. The record demonstrates that, in response to a direct question from importers and the subject producer, Commerce determined in the original AD/CVD investigations that wheels made in a third

country with rims or discs from China (but not both) are outside the scope and did not defer that question as claimed by the Government and Dexstar. Moreover, contrary to the Government's and Dexstar's arguments, excluding wheels made in third countries with rims or discs from China is not inconsistent with the third-country processing provision because it continues to cover other production scenarios that Commerce has not already addressed. Finally, rather than skip a required step in the analysis of ambiguous scope language, as claimed by Dexstar, Commerce acknowledged in the *Final Scope Ruling* that it considered a (k)(1) source in its analysis of the third-country processing provision of the scope.

### A. Commerce determined in the original AD/CVD investigations that wheels made in a third country with discs or rims from China (but not both) are outside the scope

Commerce's scope determination in the original AD/CVD investigations – a (k)(1) source that Commerce considered in making the contested scope ruling, as required by 19 C.F.R. § 351.225(k)(1) – demonstrates that Commerce previously determined that both the rims and discs "must" originate in China for steel wheels produced in third countries to fall within the scope of the *AD/CVD Orders*. Here, Defendants-Appellees' arguments fail because they disregard or ignore important context: Importers specifically asked Commerce to clarify whether "rims or discs from China" wheels are within scope and Commerce responded.

As described in Plaintiffs-Appellants' opening brief, in the original investigations, Commerce discussed the third-country processing provision and addressed the "rims or discs" question raised by importers. *See* Plaintiffs-Appellants' Opening Brief, (ECF No. 24) ("Plaintiffs-Appellants' Opening Br.") at 22–25. Specifically, importers asked Commerce to confirm in the final determinations – "ideally written into the scope itself" – "that wheels comprised of <u>rims or discs</u> from China that are assembled in a third country with <u>rims or discs</u> from third countries are not within scope." Appx154, Appx158 (emphases in original). Moreover, Zhejiang Jingu, the subject producer and respondent, "agree{d} with {Trans Texas} and Hi-Spec that the amended scope language only covers third country processing if both the 'rims **and** discs' are from China." Appx147 (emphasis in original). In response, Commerce declined to amend the scope language because it found that "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***<u>must</u> be of rims <u>and</u> discs produced in China***" for the imported wheel to be within scope. Appx122-123 (emphasis added). Commerce reiterated this conclusion at the end of its analysis:

> Furthermore, as we find that the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***<u>must</u> be of rims <u>and</u> discs produced in China*** and agree, generally, with the respondent/importer's understanding of this language, we do not find it necessary to adopt further clarification language proposed in the respondent/importer's affirmative scope comments.

Appx124 (emphasis added). By using the word "must," Commerce made clear that it is necessary for both the rims **and** discs of trailer wheels made in third countries to originate from China in order for such wheels to be within scope.

Far from demonstrating that the "rims or discs from China" question was deferred, Commerce's reasons for rejecting scope language amendments proposed by Petitioner and several importers further support that Commerce addressed this question directly during the original AD/CVD investigations. Both the Government and Dexstar wrongly argue that Plaintiffs-Appellants exaggerate the meaning of Commerce's response during the investigations to ***Petitioner's request*** to amend the scope language to include wheels made with rims "or" discs from China. *See* Gov't Response Br. at 27-28, n.8; Dexstar Response Br. at 23-24. But neither party acknowledges that Plaintiffs-Appellants do not rely on Commerce's response to Petitioner's request to amend the scope language, but rather on Commerce's response to ***the importers'*** specific question as to whether wheels made in third countries with rims or discs from China are within scope.

In this regard, importers Trans Texas and HiSpec specifically asked Commerce to confirm "that wheels comprised of rims or discs from China that are assembled in a third country with rims or discs from third countries are not within scope{,}" and recommended that Commerce amend the scope language to make this even clearer, if necessary. Appx154, Appx158. Commerce responded to this

specific question ***twice*** in its *Final Scope Decision Memo*, each time stating that further clarifying language was unnecessary because "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims <u>and</u> discs produced in China*** . . . ." Appx122-123, Appx124 (emphasis added). This context demonstrates that, rather than defer the "rims or discs from China" question, Commerce directly answered it in response to the importers.

The Government and Dexstar try to explain away Commerce's response to the importers by claiming that Commerce's statements related only to clarifying the example provided in the scope's third-country processing provision concerning wheels made with "rims ***and*** discs from China" and said nothing about whether wheels made in third countries with rims ***or*** discs from China are within scope. Gov't Response Br. at 26-29 (citing Appx124); Dexstar Response Br. at 30–31. Dexstar goes further and argues that the "existing language" cited by Commerce refers only to the phrase "rims and discs from China" – rather than to the entire third-country processing provision. *See* Dexstar at 30-31. These arguments are meritless for three reasons.

First, Dexstar focuses on Commerce's statement that it was analyzing Petitioner's intent concerning "the clarifying language in question, added at the time of the *Preliminary AD Determination* . . . ." Appx122. In the *Preliminary Scope Decision Memo*, based on Petitioner's request, Commerce "preliminarily clarif{ied}

the scope of these investigations" by adding the following language (*i.e.*, the entire third-country processing provision):

> The scope includes rims, discs, and wheels that have been further processed in a third country, including, but not limited to, the painting of wheels from China and the welding and painting of rims and discs from China to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the investigations if performed in China.

Appx135; *see also* Appx134 (noting Petitioner's comment that the "scope should be amended ***to clarify*** the country of origin criteria that will be applied when covered merchandise undergoes further processing in a third country") (emphasis added). Moreover, in the *Final Scope Decision Memo*, Commerce reiterated that the scope "clarification" requested by Petitioner pertained to the entire third-country processing provision. *See* Appx123 ("On March 1, 2029, the petitioner requested that the scope of the investigation ***be clarified*** to include the following language . . . .") (emphasis added). Thus, contrary to Dexstar's argument, the record demonstrates that the "clarifying language in question" to which Commerce refers in the *Final Scope Decision Memo* is, in fact, the entire third-country processing provision, not just the language regarding "rims and discs from China."

Second, a review of the context further demonstrates that Commerce's reference to the "existing language" in the *Final Scope Decision Memo* relates to the entire third-country processing provision of the scope description, not simply to the phrase "rims and discs from China." Specifically, when responding to the

importers'/respondent's "rims or discs from China" question, Commerce stated in the *Final Scope Decision Memo* that "the ***existing language*** sufficiently conveys the concept that ***third-country processing of a steel wheel*** <u>must</u> be of rims <u>and</u> discs produced in China" for the imported wheel to be within scope. Appx122-123 (emphases added). As shown in the text quoted above, "existing language" in this sentence applies to ***all*** "third-country processing of a steel wheel" without limitation, and thus applies to all instances in which rims and discs are assembled into steel wheels in a third country. In other words, if a steel wheel is processed in a third country, it "must" consist of "rims and discs produced in China" to fall within the scope.

Third, contrary to the Government's and Dexstar's argument, there was no dispute about the meaning of "rims and discs from China" in the third-country processing provision during the original AD/CVD investigations. Rather, the question – raised by both Petitioner and the respondent/importers – was whether steel wheels made in third countries with "rims ***or*** discs from China" were within scope. Commerce definitively answered this question when it stated ***twice*** that "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must*** be of ***rims and discs*** produced in China . . . ." Appx123, Appx124 (emphases added). For all these reasons, Commerce's scope determination in the AD/CVD investigations leads to the unavoidable conclusion that the agency

previously interpreted the third-country-processing provision to mean that trailer wheels manufactured in a third country with rims *or* discs from China – but not both – are outside the scope of the *AD/CVD Orders*. Any conclusion otherwise is unsupported by substantial evidence.

**B.** **The record lacks substantial evidence for Commerce's claim that it deferred consideration of the "rims or discs from China" scope issue in the original AD/CVD investigations**

A review of the record demonstrates that Commerce did not defer consideration of the "rims or discs from China" scope issue in the original AD/CVD investigations, and thus Commerce's conclusion to the contrary in the *Final Scope Ruling* is unsupported by substantial evidence. Contrary to the Government's and Dexstar's arguments, Commerce's isolated statement during the original investigations regarding its ability to conduct a substantial transformation analysis to assess alternative production scenarios does not detract from the conclusion that Commerce definitively determined that wheels made in third countries with rims or discs (but not both) from China are outside the scope.

Commerce's statement from the original AD/CVD investigations – regarding its possible use of the substantial transformation analysis to address future production scenarios involving wheels made with "a mix of rim and disc parts from China and a third country" – does not invalidate its conclusion that wheels made in third countries with rims or discs from China (but not both) are outside the scope.

The Government and Petitioner make much of Commerce's passing comment that it did "not foreclose a further analysis of substantial transformation" for a product made from "a mix of rim and disc ***parts*** from China and a third country" (emphasis added) in a later scope ruling, which is what they purport that Commerce did when it reviewed the wheels at issue in this appeal. Gov't Br. 26-28 (citing Appx124). While Commerce left itself with room to consider other third-country processing issues using a substantial transformation analysis, this does not override Commerce's explicit conclusion that "third-country processing of a steel wheel ***must*** be of ***rims and discs*** produced in China" in order to be within the scope of the *AD/CVD Orders*. *See* Appx123, Appx124 (emphasis added). It is unremarkable that Commerce in the original AD/CVD investigations recognized its inherent authority to conduct a substantial transformation analysis to address production scenarios it had not yet contemplated. Commerce's reference to its ability to conduct a substantial transformation analysis as part of a scope inquiry does not affect its unequivocal finding in the *Final Scope Decision Memo* – made in response to the importers' direct question – that wheels made in third countries from "rims or discs from China" are outside the scope.

Furthermore, the isolated line relied upon by Defendants-Appellees refers to a "mix of rim and disc ***parts***" – not a "mix of rims and discs." *See* Appx124 (emphasis added). Read in context, Commerce's reference to a "mix of rim and disc

*parts"* in the *Final Scope Decision Memo* cannot reasonably be interpreted to contradict its explicit confirmation in that same memo that "third-country processing of a steel wheel ***must be of rims and discs produced in China"*** for the imported wheel to be within scope. *Id.* (emphases added).

Thus, Commerce's claim that it deferred consideration of the "rims or discs from China" scope issue in the original AD/CVD investigations, *see* Appx31-32, is unsupported by substantial evidence.

## C. Excluding wheels made with rims or discs from China (but not both) is not inconsistent with the full scope language

Contrary to the Court of International Trade ("CIT")'s decision and the Government's and Dexstar's arguments, Plaintiffs-Appellants' interpretation of the scope language as excluding third-country wheels made with rims or discs from China (but not both) does not ignore the full scope language. Both the Government and Dexstar argue that the CIT was correct in stating that Plaintiffs-Appellants' interpretation of the scope language would render the "including, but not limited to" phrase and the "or any other processing that would not otherwise remove the merchandise from the scope of the investigation if performed in China" phrase impermissibly superfluous. *See* Gov't Response Br. at 25, n.7 (citing Appx8), 30; Dexstar Response Br. at 19-20. This is incorrect.

Regarding the "including, but not limited to" phrase, acknowledging that Commerce has addressed one production scenario (wheels made in third-countries

12

with rims or discs from China but not both) does not render the "including, but not limited to" language in the scope superfluous because there are other production scenarios that could be covered by this provision. Such other production scenarios could include Chinese-origin rims finished or painted in a third country, Chinese-origin rims finished or painted in a third country, or *parts* of Chinese-origin rims and *parts* of Chinese-origin discs that are finished and painted in a third country.

Moreover, the "any other processing" phrase does not apply to the facts at issue in this case. "The scope includes rims, discs, and wheels that have been further processed in a third country, including, but not limited to . . . any other processing that would not otherwise remove the merchandise from the scope of the investigations if performed in China." Here, however, the only wheel component originating from China that Asia Wheel processes in Thailand is the Chinese-origin disc. *See* Appx107-108 (describing Asia Wheel's production of "Method A Wheels"), Appx161-165 (detailed description of Asia Wheel's production method for "Method A Wheels" and production flowchart). In Thailand, Asia Wheel does not merely process Chinese-origin discs; it also manufactures rims, welds the rims and Chinese-origin discs, and coats the resulting wheels. *See* Appx162-163. Therefore, the "any other processing" phrase is inapplicable to the scope question raised in this case.

In sum, consideration of the full scope language in context demonstrates that wheels made in third countries with rims or discs from China (but not both) must be excluded. Consequently, Commerce's scope ruling is unsupported by substantial evidence.

### D. Contrary to Dexstar's argument, Commerce <u>did</u> analyze the (k)(1) sources, as required by the regulations

Contrary to Dexstar's argument, the record demonstrates that Commerce reviewed a (k)(1) source – namely, the *Final Scope Decision Memo* from the original AD/CVD investigations – in the process of interpreting the meaning of the third-country processing provision of the scope description. Despite this, Dexstar argues that Commerce "was explicit in its ruling it was *not* performing a (k)(1) analysis under that regulation" because Commerce was not determining whether a ***form*** of merchandise falls within the scope coverage but rather whether the merchandise ***originated*** from the subject country. Dexstar's Response Br. at 15-18 (citing Appx53).

As an initial matter, Dexstar asserts, without support, that Commerce need only consider the (k)(1) sources when "determining whether a *form* of merchandise falls within the scope coverage." Dexstar's Response Br. at 16. In this case, however, the scope of the *AD/CVD Orders* included a third-country processing provision. *See AD/CVD Orders*, 84 Fed. Reg. at 45,954. Thus, Commerce was required to consult (k)(1) sources to discern this provision's meaning unless the text

of the provision was unambiguous.  In fact, Commerce **did** review the *Final Scope Decision Memo* in the context of interpreting the third-country processing provision in the *Final Scope Ruling*.  *See* Appx31-32.  Thus, Dexstar's argument is plainly wrong.

## II. THE GOVERNMENT AND DEXSTAR FAIL TO DEMONSTRATE THAT COMMERCE LAWFULLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE IMPORTERS HAD ADEQUATE NOTICE OF AD/CVD LIABILITY

In the alternative, if the Court affirms Commerce's scope ruling, the Government and Dexstar have not shown that Commerce lawfully instructed CBP to continue suspending the liquidation of imports of the merchandise in question that entered before importers received adequate notice of AD/CVD liability.  First, the Government and Dexstar mischaracterize Plaintiffs-Appellants' "lack of adequate notice" argument.  Plaintiffs-Appellants' argument is not focused on **certainty** of scope coverage, but rather invokes the fundamental due process principle of adequate notice or fair warning.  Moreover, Commerce may not apply its regulation, 19 C.F.R. § 351.225(l), if doing so would violate the importers' due process right to adequate notice.  Lastly, it is Commerce – not CBP – that has the final authority to determine the scope of AD/CVD orders, as recognized by the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517(e), including when merchandise becomes subject to those orders.  Here, because importers lacked adequate notice that wheels made in Thailand with rims or discs from China (but not both) are "covered merchandise,"

Commerce must instruct CBP that imports of such wheels entered before the contested scope inquiry began are not covered merchandise and instruct CBP to terminate its prior suspension of liquidation under the EAPA.

## A. The Government and Dexstar mischaracterize Plaintiffs-Appellants' arguments regarding adequate notice

The Government and Dexstar mischaracterize Plaintiffs-Appellants' arguments regarding adequate notice. Defendant-Appellees first suggest that Plaintiffs-Appellants demand certainty of scope coverage, when in fact Plaintiffs-Appellants seek adequate notice to importers that the merchandise at issue falls within the scope of the *AD/CVD Orders*. Similarly, Defendant-Appellees claim that Plaintiffs-Appellants' argument regarding adequate notice is essentially the same as their argument about the scope coverage. To the contrary, Plaintiffs-Appellants' "adequate notice" argument is made in the alternative and addresses the timing of the imposition of duties, not the scope coverage itself.

First, Defendant-Appellees assert that adequate notice does not require certainty and mistakenly suggest that Plaintiffs-Appellants seek certainty of scope coverage. *See* Gov't Response Br. at 36; Dexstar Response Br. at 36. Plaintiffs-Appellants do not dispute that the scopes of AD/CVD orders are usually drafted in general terms, nor do Plaintiffs-Appellants expect Commerce to contemplate every possible scenario under which the orders would apply at the investigation stage.

Although scope questions may arise that Commerce has not contemplated previously, that is not what happened here.

Rather, Commerce considered and addressed the question of "rims or discs from China" wheels in the original AD/CVD investigations. In fact, importers pointed to the "including, but not limited to" language in the scope as potentially confusing, *see* Appx154, Appx158, and requested that Commerce confirm "that wheels comprised of rims or discs from China that are assembled in a third country with rims or discs from third countries are not within scope{,}" and recommended that Commerce amend the scope language to make this clearer. Appx154, Appx158. Commerce responded by stating **twice** that "the existing language sufficiently conveys the concept that third-country processing of a steel wheel **must** be of **rims and discs** produced in China . . . ." Appx123, Appx124 (emphases added).

Dexstar argues that the Plaintiffs-Appellants should have requested a scope ruling before shipping their wheels made with rims or discs from China based on the "warnings" provided by Commerce in its *Final Scope Decision Memo* that "further analysis would be required to address the scope coverage of wheels completed from mixed-origin components." Dexstar Response Br. at 9-10; 38-39. But the importers **already had requested clarification** of the scope with respect to the specific question of "rims or discs from China" wheels during the original AD/CVD investigations, and flagged for Commerce that there might be confusion based on the "including,

but not limited to" language unless Commerce confirmed that such wheels are outside the scope. In response, Commerce agreed that "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims and discs*** produced in China . . . ." Appx123, Appx124 (emphases added). Importers were not obliged to repeat a question they already had asked, and reasonably relied on Commerce's answer to conclude that "rims or discs from China" wheels are outside the scope. The importers lacked adequate notice that Commerce would reverse itself in a subsequent scope ruling and determine that such wheels fall within the scope of the *AD/CVD Orders*. Thus, Commerce's failure to instruct CBP to terminate the suspension on liquidation of imports entered before the initiation of the scope inquiry was contrary to law.

Second, Defendant-Appellees misunderstand how Plaintiffs-Appellants' argument regarding adequate notice is distinct from their argument that wheels made with rims or discs from China (but not both) are outside the scope. Plaintiffs-Appellants are making this argument in the alternative. Adequate notice concerns ***when*** imported merchandise can lawfully be subject to AD/CVD duties – not ***whether*** the merchandise falls within the scope. Should the Court affirm Commerce's scope ruling, imports of wheels made in third countries with rims or discs from China that entered before the initiation date of the scope inquiry cannot

lawfully be subject to AD/CVD duties, because such imports were made before importers had adequate notice that the wheels fall within the scope.

**B.   Commerce cannot lawfully apply its own regulations in a manner that would violate the broader due process principle requiring it to provide importers with adequate notice before imposing AD/CVD liability**

Despite recognizing the due process principle that requires Commerce to provide importers fair warning of potential AD or CVD liability before liquidation of imports can be suspended, the Government and Dexstar wrongly argue that Commerce's regulation, 19 C.F.R. § 351.225(l) controls Commerce's conduct in this case. Commerce, however, cannot lawfully apply this regulation when doing so would violate the broader due process principle of adequate notice.

Courts have recognized that there is a "broader due-process principle" that applies that, before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013) (citations omitted). In AD/CVD proceedings, this principle requires Commerce to provide fair warning of potential AD or CVD liability before the liquidation of imports can be suspended and the imposition of duties can begin. *See Tai-Ao Aluminum (Taishan) Co. v. United States,* 983 F.3d 487, 495 (Fed. Cir. 2020) ("*Tai-Ao II*"); *see also* Gov't Response Br. at 38 ("Asia Wheel is correct in its recitation

19

of the general principles of notice articulated in *Tai-Ao Aluminum Co. v. United States . . . .*"). To determine whether an interested party has "adequate notice" prior to initiation of a scope inquiry, the court inquires whether the scope of the orders "may be reasonably interpreted to include" the products at issue. *Mid Continent Nail*, 725 F.3d at 1301; Appx14.

The Government and Dexstar argue that Commerce had to continue the suspension of liquidation initiated by CBP's interim measures during its EAPA investigation, per the terms of Commerce's suspension regulation, 19 C.F.R. § 351.225(l). As explained in *Mid Continent Nail*, however, Commerce may not enforce a regulation by means of a monetary sanction if enforcing it would violate the due process principle of "adequate notice." *Mid Continent Nail Corp.,* 725 F.3d at 1300–01. That is exactly what occurred here.

The facts demonstrate that neither Asia Wheel nor importers had adequate notice that third-country wheels made with rims or discs from China (but not both) could be within the scope of the *AD/CVD Orders* until the initiation of Commerce's scope inquiry. As described above, Commerce's statements during the original AD/CVD investigations indicated that Commerce had determined that third-country wheels made of rims or discs from China were outside the scope. Appx123, Appx124. Asia Wheel and the importers did not even have notice that CBP had initiated an EAPA investigation to address an allegation that Zhejiang Jingu was

transshipping Chinese-origin trailers wheels through its Thai affiliate Asia Wheel until July 2020. Appx213-218; Appx232-240. This allegation did not address Thai wheels made with rims or discs from China, nor was the ensuing EAPA investigation initiated on this basis. *See* Appx213-221.

On November 10, 2020, Asia Wheel requested a scope ruling from Commerce to confirm that certain trailer wheels produced by Asia Wheel in Thailand were outside the scope of the *AD/CVD Orders*, among them third-country wheels made with rims or discs from China but not both. Appx102. Within 45 days of receiving the scope ruling application, Commerce may (i) issue a final ruling "based solely on the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section," as to "whether a product is included within the scope of an order{,}" 19 C.F.R. § 351.225(c)(ii)(C)(2), (d), or "initiate a scope inquiry{,}" 19 C.F.R. § 351.225(c)(ii)(C)(2), (e). Given Commerce's statements in the original AD/CVD investigations, Asia Wheel and importers reasonably expected that Commerce would issue a final scope ruling finding that third-country wheels made with rims or discs from China (but not both) were outside the scope without initiating a scope inquiry. Thus, it was not until March 22, 2021, when Commerce initiated a scope inquiry in response to Asia Wheel's request that Asia Wheel and importers received adequate notice that imports of third-country wheels made with rims or discs from China (but not both) could be subject to the *AD/CVD Orders*.

By applying the suspension regulation at § 351.225(l) in this case and attaching AD and CVD liability to imports that had entered before initiation of the underlying scope inquiry (*i.e.*, by means of a monetary sanction), Commerce failed to provide importers with fair warning of potential AD or CVD liability and, thus, violated the due process principle recognized by this court in *Tai-Ao II* and *Mid Continent Nail*. *See Tai-Ao II*, 983 F.3d at 495; *Mid Continent Nail*, 725 F.3d at 1300-01. Consequently, Commerce's actions were contrary to law.

The Government asserts that Commerce's statements in the original AD/CVD investigations were sufficient to provide fair warning to importers of potential AD or CVD liability. Gov't Response Br. at 38–39. The Government argues that, unlike in *Tai-Ao II*, where "Commerce expanded the scope of its inquiry" and made statements that "contradicted statements made by Commerce earlier," Commerce's statements in this case "simply clarified . . . the original scope and w{ere} consistent with earlier statements in the investigation." *See* Gov't Response Br. at 38–39 (citing Appx15). In *Tai-Ao II*, however, Commerce did not make contradictory statements in the anticircumvention proceeding at issue, but instead answered a question that it previously had deferred to a later date.

When initiating the anticircumvention inquiry at issue in *Tai-Ao II* with respect to one specific producer, Commerce explicitly deferred the question of

whether to expand its anticircumvention inquiry to all Chinese producers to a later date. *See Aluminum Extrusions from the People's Republic of China,* 81 Fed. Reg. 15039, 15042 (Dep't Commerce Mar. 21, 2016) ("*Tai-Ao Initiation Notice*") ("The Department **intends to consider** whether the inquiry should apply to all imports of extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy and are heat-treated, regardless of producer, exporter, or importer, from the PRC.") (emphasis added). Commerce later addressed the question and decided to apply its affirmative preliminary circumvention determination to all Chinese producers. *See Tai-Ao II*, 983 F.3d at 496 (citing *Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 79,444, 79,445 (Dep't of Commerce Nov. 14, 2016) ("*Tai-Ao Preliminary Determination*")). The *Tai-Ao II* Court held that importers did not receive "fair warning" until Commerce actually answered the deferred question and applied AD/CVD to companies other than the lone producer identified at initiation. *Tai-Ao II,* 983 F.3d at 494-95. Thus, *Tai-Ao II* confirms that Commerce's statements of intent to consider the potential application of AD/CVD in the future do not, by themselves, constitute fair notice. *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 391 F. Supp. 3d 1301, 1314–15 (Ct. Int'l Trade 2019) ("*Tai-Ao I*"); *Tai-Ao II,* 983 F.3d at 495.

Tai-Ao II supports the lack of fair warning here. At most, Commerce **suggested** in the *Final Scope Decision Memo* that it might in the future revisit

whether wheels made from "a mix of rim and disc parts from China and a third country" are subject to the *AD/CVD Orders* based on a substantial transformation analysis. Commerce's statements in the original AD/CVD investigations regarding its authority to conduct a substantial transformation analysis, *see* Appx122, Appx124, were nothing more than the "inten{t} to consider" found to constitute inadequate notice in *Tai-Ao II*. *See Tai-Ao II,* 983 F.3d at 494-95. Thus, in accordance with this court's holding in *Tai-Ao II*, Commerce's statements in the original AD/CVD investigations failed to provide fair warning to importers that wheels made in Thailand with rims or discs from China (but not both) were subject to the *AD/CVD Orders*. Commerce's conclusion otherwise in its *Final Scope Ruling*, *see* Appx57-58, is unsupported by substantial evidence. Moreover, importers lacked adequate notice until Commerce decided to revisit its scope determination from the original AD/CVD investigations by initiating a scope inquiry. Consequently, Commerce violated the due process principle of adequate notice reaffirmed in *Tai-Ao II* when it applied 19 C.F.R. § 351.225(l) to continue to suspend liquidation of imports of "rims or discs from China" wheels entered before the initiation date of the scope inquiry and its actions were contrary to law.

### C. Commerce, not CBP, has the ultimate authority to determine not only whether but *when* imported merchandise is subject to an AD/CVD order

The Government and Dexstar wrongly maintain that Commerce lacked the authority to instruct CBP to terminate its prior suspension of liquidation because CBP suspended liquidation pursuant to its independent authority under the EAPA. While CBP may have had initial authority to suspend liquidation under the EAPA, Commerce has the ultimate authority to determine whether – and *when* – imported merchandise is subject to an AD/CVD order, as recognized by the EAPA itself. Here, in accordance with that authority, Commerce was bound by the due process principle of adequate notice to instruct CBP that wheels made in Thailand from "rims or discs from China" did not become "subject to" the *AD/CVD Orders* – and, thus, were not "covered merchandise" under 19 U.S.C. § 1517(a)(3) – until the initiation date of the scope inquiry.

The Government and Dexstar argue that Commerce had no choice but to continue CBP's prior suspension of liquidation pursuant to its suspension regulation, 19 C.F.R. 351.225(l). *See* Gov't Response Br. at 32–34; Dexstar Response Br. at 38–43. This is incorrect. As discussed above, rather than blindly apply its suspension regulation in violation of due process, Commerce should have instructed CBP that imports of wheels made from rims or discs from China (but not both) that

25

entered before the initiation date of the scope inquiry were **not** "covered merchandise" for lack of adequate notice. *See Tai-Ao II*, 983 F.3d at 495.

Relatedly, the Government and Dexstar wrongly contend that Commerce cannot interfere with CBP's independent authority under the EAPA to suspend the liquidation of imports where CBP has a reasonable suspicion of AD/CVD evasion. *See* Gov't Response Br. at 34-36; Dextar's Response Br. at 41-46. But the Government and Dexstar once again ignore that Commerce, not CBP, is the ultimate authority on the scope of an AD/CVD order, as demonstrated by the "covered merchandise" referral mechanism built into the EAPA. The EAPA recognizes that Commerce has the ultimate authority to determine the scope of AD/CVD orders, *see* 19 U.S.C. § 1517(b)(4)(a)(i) (instructing CBP to refer cases where it is unable to determine if merchandise is "covered merchandise" to Commerce as the administering authority), which includes both whether the merchandise is within scope and **when** it became subject to an AD/CVD order, *see* 19 U.S.C. § 1517(a)(3) (defining "covered merchandise" to mean merchandise that is "subject to" an AD/CVD order). As the ultimate authority on the scope of the *AD/CVD Orders*, Commerce had the authority – and was bound by the due process principle of adequate notice – to instruct CBP accordingly. *See Tai-Ao II*, 983 F.3d at 495; *Mid Continent Nail Corp,* 725 F.3d at 1301; Appx14.

Moreover, Dexstar's reliance on *Star Pipe Prod. v. United States*, 981 F.3d 1067, 1078 (Fed. Cir. 2020) to suggest that CBP has independent enforcement authority to suspend liquidation is misplaced.  There, the court drew a distinction between "Commerce's authority to assess duties in the context of a scope inquiry" and CBP's authority under "{19 U.S.C.} *§ 1592* to assess ***penalties*** for fraudulent or negligent violations" of customs law.  *Star Pipe*, 981 F.3d at 1079 (emphasis added).  Here, in contrast, the issue raised is Commerce's authority to assess AD/CVD duties in the context of a scope inquiry and CBP is ***not*** assessing penalties under §1592 for fraudulent or negligent violations of customs law.  Thus*, Star Pipe* is inapposite.

Dexstar also cites *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1351 (Ct. Int'l Trade 2021), for the proposition that "CBP's authority to suspend liquidations is not bound by Commerce's separate authority to take the same action in different circumstances."  Dexstar Response Br. at 45.  In *Diamond Tools*, however, the trade court did not address the "broader due-process principle" that importers must have fair warning before their imported merchandise is subject to AD/CVD liability.  *See Tai-Ao II*, 983 F.3d at 495.  Nor did the court hold that CBP has the authority to disagree with a scope ruling made by Commerce.  Nor is the authority to suspend liquidation the same thing as the authority to determine which imports are "covered merchandise."  *See* Gov't Response Br. at 34-36; Dexstar Response Br. at 45.  Commerce has the ultimate authority to determine which

imports are "covered merchandise" – not CBP – as reflected in the EAPA itself, which provides for covered merchandise referrals, as discussed above.  *See* 19 U.S.C. § 1517(a)(3), (b)(4)(a)(i).  Accordingly, Commerce should have instructed CBP that imports entered before the initiation date of the scope inquiry are not "covered merchandise" because the importers lacked adequate notice until that date.

Finally, in attempting to distinguish *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1267 (Ct. Int'l Trade 2022) by noting that it related to a negative scope determination, the Government and Dexstar miss the point.  *See* Gov't Response Br. at 39-40; Dexstar Response Br. at 44.  The salient proposition articulated in that case – that Commerce is the administering authority of the scope of the orders, not CBP – stands regardless of whether Commerce's scope determination is affirmative or negative.[1]  *See Aspects Furniture*, 607 F. Supp. 3d at 1267-68; Plaintiffs-Appellants Opening Br. at 47-48.

---

[1] In any event, CBP's prior suspension of liquidation as "interim measures" under the EAPA (19 U.S.C. § 1517(e)) was unlawful because CBP failed to give the importers under investigation any opportunity to submit evidence or offer arguments in their defense prior to its imposition of interim measures.  *See Superior Commercial Solutions LLC v. United States*, Court No. 24-cv-00052-JCG, Slip Op. 25-147 at 26 (Nov. 26, 2025).  As noted in Plaintiffs-Appellants' initial brief, CBP did not inform the importers of the EAPA investigation until after it had imposed interim measures.  *See* Plaintiffs-Appellants' Opening Br. at 9.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Commerce's *Final Scope Ruling* is unsupported by substantial evidence on the record and otherwise not in accordance with law. Plaintiffs-Appellants respectfully request that this Court vacate or reverse the CIT's decision on these issues, and remand to Commerce with instructions to issue a revised determination, consistent with the opinion of this Court.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
Allison Kepkay
Matthew W. Solomon
Cristina Cornejo

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Plaintiff-Appellant Asia Wheel Co., Ltd.

/s/ Nancy A. Noonan
Nancy A. Noonan

ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006
(202) 857-6000

Counsel to Plaintiff-Appellant Dexter Distribution Group LLC, fka TexTrail Inc.

/s/ Jordan C. Kahn
Jordan C. Kahn

GRUNFELD DESIDERIO LEBOWITZ SILVERMAN & KLESTADT, LLP
1201 New York Ave., NW Ste. 650
Washington, DC 20005
(202) 783-6881

Counsel to Plaintiff-Appellant TRAILSTAR LLC

/s/ R. Kevin Williams
R. Kevin Williams
Mark Ludwikowski

CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, IL 60601
(312) 985-5900

Counsel to Plaintiff-Appellant Lionshead Specialty Tire & Wheel, LLC

January 20, 2026

(Form 19)

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

## CAFC Court Nos. 2025-1689, 2025-1690, 2025-1692, 2025-1693

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

    ☑    the filing has been prepared using a proportionally-spaced typeface and includes 6,393 words.

    ☐    the filing has been prepared using a monospaced typeface and includes _____ lines of text.

    ☐    the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: January 20, 2026        Signature:      /s/ Jay C. Campbell

                                    Name:          Jay C. Campbell